UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

STEVEN HUNTLEY,

          Plaintiff,          Case No. 1:21-cv-350

v.                                          Honorable Robert J. Jonker

RICHARD FULLER, III et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    **Factual allegations**

At the time he filed his complaint, Plaintiff was incarcerated at the Kalamazoo County Jail. The events about which he complains occurred at that facility. Plaintiff sues the following officials employed by the Kalamazoo County Sheriffs Office, which operates the

Kalamazoo County Jail:  Sheriff Richard Fuller, III; Undersheriff Unknown Van Dyken; Captain Unknown Price; Lieutenant Unknown Faulk; Sergeant (Sgt.) Unknown Munoz; and Deputy Unknown Varda.

Plaintiff alleges that, on March 29, 2021, he was placed in segregation at the jail after being charged with three counts of an unspecified misconduct.  Plaintiff requested a formal administrative hearing.  Defendant Shift Sgt. Munoz found Plaintiff guilty of two of the three counts and imposed a sanction of five days of segregation, beginning March 29, 2021, and ending April 2, 2021.[1]  Plaintiff, however, was not released from segregation until April 6, 2021.

On the night of April 3, 2021, Plaintiff asked Deputy Staran (not a defendant) why he was still in segregation.  Staran left and then returned and advised Plaintiff that Sergeant Munoz stated that he was leaving it to Classification Director White (not a defendant).  Later that same night, Plaintiff spoke with Deputy Mortimer (not a defendant), who commented that Plaintiff looked like he needed to be in segregation.

The following day, Plaintiff asked Defendant Deputy Varda about his continued placement in segregation.  Varda responded, "[Y]ou will have all the paper work you need when the prosecutor authorizes charges on you."  (Compl., ECF No., PageID.4.)  Later on April 4, Plaintiff spoke with Deputy West (not a defendant) and requested a grievance form.  West promised to bring one but never did.  Plaintiff also spoke with Deputy Rife (not a defendant) and a shift sergeant, who told Plaintiff that he would inform Sergeant Doorleg (sp?), but nothing came of the inquiry.  Plaintiff finally obtained a grievance form from another segregation prisoner.

---

[1] The Court notes that Plaintiff attaches a response sent to him by Defendant Munoz on April 6, 2021, which indicates that Munoz told Plaintiff only that he was found guilty and that he would have to do some time in segregation, "**probably** like 5 days, but it will be up to classifications[.]"  (Ex. to Compl., ECF No. 1-1, PageID.16 (emphasis in original).)

2

On April 5, 2021, Plaintiff submitted a Step-II grievance. Deputy Orphin (not a defendant) returned the grievance to Plaintiff that same day, under instructions from Shift Sergeant Austin (not a defendant). When Sgt. Austin made rounds that evening, Plaintiff presented the grievance, and Austin indicated that she had not noticed the Step-II grievance attached to the Step-I grievance. She told Plaintiff that she would give the grievance forms to Defendant Sgt. Munoz.

Early the following morning, Deputy White released Plaintiff from segregation. White informed Plaintiff that placement in segregation was not a violation of his rights and that Plaintiff should have received a longer segregation sanction for his misconducts.

Plaintiff alleges that Defendants Fuller, Van Dyken, Price, and Faulk failed to intervene to prevent Plaintiff from remaining in segregation, failed to train and supervise their staff, failed to perform the duties of their offices, and failed to institute proper procedures and protocols, thereby causing Plaintiff to be subjected to cruel and unusual punishment. He alleges that Defendant Munoz was derelict in his duties, leaving Plaintiff in segregation beyond his sanction days. Plaintiff contends that Defendant Varda intentionally impeded Plaintiff's exhaustion of his administrative remedies.

Plaintiff does not identify the relief he seeks.

II.  **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

3

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.   **Grievance Process**

Plaintiff complains that Defendants deprived him of his right to due process by failing to ensure the existence of an effective grievance process and/or improperly failing to use that process.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison

4

grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, to the extent that Plaintiff intends to claim that his right to petition government is violated by Defendant's failure to process or act on his grievances, he fails to state a claim. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Further, Defendants' failures to offer an effective grievance process have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

5

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

IV.   **Substantive Due Process**

Plaintiff alleges that Defendants, by keeping him in segregation for an additional three or four days, subjected him to "cruel and unusual punishment." (Compl., ECF No. 1, PageID.6–9.) The phrase "cruel and unusual punishment" is taken from the Eighth Amendment. U.S. Const., amend. VIII, cl. 3.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

6

*v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

7

Plaintiff, however, was housed as a pretrial detainee, not a convicted prisoner, and the Eighth Amendment does not apply to him. While occasionally observing that the Due Process Clause arguably offered greater protections than the Eighth Amendment to pretrial detainees, *see, e.g.*, *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (observing that a strong argument exists whether the Due Process Clause guarantees greater protections to a pretrial detainee than the Eighth Amendment standard) (citing cases), until relatively recently, the Sixth Circuit routinely applied the Eighth Amendment's deliberate-indifference standard to claims raised by detainees about jail conditions. *See, e.g., Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016).

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), however, the Supreme Court held that the use of excessive force on pretrial detainees is measured under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. The Court rejected the subjective component of the deliberate-indifference standard under the Eighth Amendment, holding that the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable. *Id.* at 398; *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*). After *Kingsley*, courts struggled with whether the new, objective standard of *Kingsley* applied to Eighth Amendment claims other than claims of excessive force.

In *Richmond v. Huq et al.*, 885 F.3d 928 (6th Cir. 2018), the Sixth Circuit noted the existence of the question and the circuit split, but it declined to decide whether, in the context of a failure to provide medical care, *Kingsley* eliminated the requirement of proving the subjective prong of the deliberate indifference test for pretrial detainees under the Fourteenth Amendment. *Id.* at 938 n.3. As recently as July 2021, the Sixth Circuit reserved decision on the standard that should apply to the adequacy of medical care or other prison conditions beyond excessive force. *See Bowles et al. v. Bourbon Cnty.*, ___ F. App'x ___, 2021 WL 3028128, at *6–8 (6th Cir. July

19, 2021) (discussing *Kingsley* at length and surveying circuit split, but declining to reach the issue as plaintiff alleged nothing more than negligence).

But in *Brawner v. Scott Cnty.*, ___ F.4th ___, 2021 WL 4304754 (6th Cir. Sept. 22, 2021), in a published decision, the Sixth Circuit considered if and how *Kingsley* applied in a case involving allegations of inadequate medical care for a pretrial detainee.  The court held that *Kingsley* required a modification of the deliberate-indifference standard for pretrial detainees, because the deliberate-indifference standard flowed from the Eighth Amendment's prohibition on cruel and unusual *punishments*.  *Id.* at *6 (quoting *Farmer*, 511 U.S. at 837) ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'").

In applying *Kingsley*, however, the Sixth Circuit did not impose a strictly objective test for conditions-of-confinement claims; it modified the subjective component of the test.  The court held that, as with Eighth Amendment claims, negligence is not enough.  *Id.* at *7.  Instead, a recklessness standard applies.  *Id.*  Nevertheless, that recklessness standard is different than the recklessness standard observed in Eighth Amendment cases, which is taken from the criminal law and applies "'only when a person disregards a risk of harm *of which he is aware*.'"  *Id.* at *5 (emphasis added) (quoting *Farmer*, 511 U.S. at 836–37).  In contrast, in Fourteenth Amendment claims by pretrial detainees, the court adopted the civil recklessness standard observed by the Second, Seventh, and Ninth Circuits:

> A pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see Darnell*, 849 F.3d at 35 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."); *Griffith*, 975 F.3d at 589 (Clay, J., concurring in part and dissenting in part) (explaining that a pretrial detainee must

9

> prove that the defendant acted "intentionally to ignore [her] serious medical need or recklessly failed to act with reasonable care to mitigate the risk that the serious medical need posed to the pretrial detainee, even though a reasonable official in the defendant's position would have known, or should have known, that the serious medical need posed an excessive risk to the pretrial detainee's health or safety").

*Brawner*, 2021 WL 4304754, at *7. In other words, recklessness under the Fourteenth Amendment's substantive due process standard exists where a defendant disregards a risk of which *he is aware or should have been aware*—a "knew or should have known" standard of disregard. Applying this standard, the Sixth Circuit held that, in order to meet his burden of proof, a pretrial detainee must show the following:

> To meet her burden to show that [Defendant] violated her constitutional right to adequate medical care, [a pretrial detainee] need[s] to present evidence from which a reasonable jury could find (1) that she had an objectively serious medical need; and (2) that [Defendant's] action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore [Plaintiff's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [Plaintiff], even though a reasonable official in [Defendant's] position would have known that the serious medical need posed an excessive risk to [Plaintiff's] health or safety.

*Id.* at *8.

In the instant case, Plaintiff utterly fails to allege that he faced a serious risk to his health or safety. He merely had to remain in segregation for a few extra days. Plaintiff makes no allegations that the conditions of segregation placed him at any risk, much less a serious risk, to his health or safety; indeed, he makes no factual allegations about the conditions in the segregation unit. He therefore fails to meet the objective component of the Fourteenth Amendment standard.

Moreover, given that failure, Plaintiff cannot demonstrate that any reasonable prison official knew or should have known that Plaintiff faced an excessive risk to his health or safety, yet failed to act. Plaintiff's claim therefore fails on the subjective prong as well.

Plaintiff's Eighth Amendment claim, properly construed as a substantive due process claim, therefore will be dismissed for failure to state a claim.

V. **Supervisory Liability**

Even if Plaintiff could state a federal claim against one or more Defendants, his claims against Defendants Fuller, Van Dyken, Price, and Faulk would be subject to dismissal. Plaintiff fails to make any factual allegations against Defendants Fuller, Van Dyken, Price, and Faulk, much less specific factual allegations. He simply makes conclusory legal claims against them, stating that they failed to train and supervise their subordinates and failed to ensure that policies existed that would have prevented Plaintiff from spending an extra three or four days in segregation and would have ensured his access to the grievance process.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Fuller, Van Dyken, Price, and Faulk engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

VI. **State-law claim**

Plaintiff alleges that Defendants violated their state oaths of office in taking the actions outlined in the complaint. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated their state oaths of office therefore fail to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss without prejudice Plaintiff's state-law claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 7, 2021            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE

13